UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE SUTTON,

                Plaintiff,        Civil Action No. 18-10815
                                      Honorable Laurie J. Michelson
                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 13]**

Plaintiff Denise Sutton ("Sutton") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #12, 13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Sutton is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **GRANTED**, Sutton's Motion for Summary Judgment (**Doc. #12**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.     REPORT

### A.     Background

Sutton was 57 years old at the time of her amended alleged onset date of September 5, 2015, and at 5'3" tall weighed approximately 190 pounds during the relevant time period. (Tr. 191, 192, 196). She completed high school and one year of college. (Tr. 35, 197). She worked in various jobs – including as a laundry attendant, bartender, bill collector, and home health care provider – before stopping work because of a lack of work in July 2013. (Tr. 35-36, 196-97). She now alleges disability primarily as a result of right knee pain. (Tr. 28, 38, 204).

After Sutton's applications for DIB and SSI were denied at the initial level on November 20, 2015 (Tr. 88-103), she timely requested an administrative hearing, which was held on May 26, 2017, before ALJ Virginia Herring (Tr. 24-61). Sutton, who was represented by attorney Adam Banton, testified at the hearing, as did vocational expert Pauline McEachin. (*Id.*). On August 21, 2017, the ALJ issued a written decision finding that Sutton is not disabled under the Act. (Tr. 11-19). On January 8, 2018, the Appeals Council denied review. (Tr. 1-5). Sutton timely filed for judicial review of the final decision on March 13, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Sutton's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Sutton is not disabled under the Act. At Step One, the ALJ found that Sutton has not engaged in substantial gainful activity since September 5, 2015 (the amended alleged onset date). (Tr. 14). At Step Two, the ALJ found that she has the severe impairments of osteoarthritis and degenerative joint disease of

the right knee and obesity. (*Id.*). At Step Three, the ALJ found that Sutton's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 15).

The ALJ then assessed Sutton's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: frequent balancing; occasional stooping and climbing of ramps and stairs; no kneeling, crouching, crawling, or climbing of ladders, ropes, or scaffolds; and must avoid environments with extreme cold and humidity/wetness. (Tr. 16).

At Step Four, the ALJ found that Sutton is capable of performing her past relevant work as a bartender and bill collector. (Tr. 18). As a result, the ALJ concluded that Sutton is not disabled under the Act. (*Id.*).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.

2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D. Analysis**

In her motion for summary judgment, Sutton argues that the ALJ erred: (1) by not including her use of a cane in the RFC; and (2) in evaluating the opinion of her treating physician, Henri Godbold, M.D. (Doc. #12 at 10-17). Each argument is addressed below.[1]

*1. The ALJ's RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ found that Sutton retains the RFC to perform a reduced range of light work, noting that her allegations of disabling pain are at odds with the objective medical evidence of record, which she thoroughly discussed. (Tr. 16-18). For example, the ALJ noted

---

[1] Because Sutton does not challenge the ALJ's evaluation of her alleged mental impairments, the Court will focus its discussion on evidence pertaining to her physical impairments.

that, despite Sutton's allegations of right knee pain and associated issues with mobility, she did not complain of such symptoms until around the time of the amended alleged onset date. (Tr. 17, 351, 356). Moreover, it was more than one year later when her primary care physician, Dr. Godbold, referred her to an orthopedic specialist for further evaluation. (Tr. 369-70). At that time, Terrence Lock, M.D. observed some limitation in the range of motion in Sutton's right knee, but there was no significant effusion. (Tr. 327). X-rays revealed medial compartment end stage osteoarthritis in the right knee (Tr. 327, 346-47), but Sutton declined a corticosteroid injection and scheduled an appointment to discuss the possibility of arthroplasty[2] (Tr. 327). The ALJ also noted that Sutton went through physical therapy in January 2017, describing her pain as "mild" or "minimal" at times and indicating that she did not require any pain medication. (Tr. 17, 336 (pain "mild" on January 10, 2017), 337 (pain "not too bad" on January 12, 2017), 338 (feeling "pretty good" with "minimal" pain on January 17, 2017), 339 (right knee feeling "fairly good" on January 24, 2017), 340 (symptoms in knee were "minimal" on January 26, 2017)).

In formulating Sutton's RFC, the ALJ also discussed the October 16, 2015 opinion of consultative examining physician Cynthia Shelby-Lane, M.D. (Tr. 17, 286-94). During that examination, Sutton exhibited a slight limp on the right side, but she did not use a cane or other aid for walking. (Tr. 288). Flexion of the right knee was slightly limited, but her stance was normal, and she was able to tandem, heel, and toe walk slowly. (*Id.*). As the ALJ noted, even with these findings, Dr. Shelby-Lane did not indicate any functional limitations due to Sutton's right knee. (Tr. 17, 288).

Additionally, in assessing Sutton's RFC, the ALJ considered Dr. Godbold's April 29,

---

[2] Although it appears that Sutton discussed the possibility of surgery at subsequent appointments, she was told that surgery was not advised unless she stopped smoking, which she did not do. (Tr. 44, 330, 346).

6

2017 opinion. (Tr. 17-18, 381-84). As discussed in greater detail below, *infra* at 9-10, Dr. Godbold opined that Sutton was limited in numerous ways, rendering her disabled. (Tr. 381-84). The ALJ gave this opinion very little weight, however, noting that the extreme limitations Dr. Godbold imposed were inconsistent with the other medical evidence of record, including the doctor's own treatment notes, the absence of positive clinical findings, and the imaging studies. (Tr. 17-18).

Sutton now argues that the ALJ's RFC finding is not supported by substantial evidence because it fails to account for her need for a cane when walking or standing. (Doc. #12 at 11). In support of this argument, Sutton points to a March 2017 office visit with Dr. Godbold, at which time she was prescribed a cane. (*Id.* (citing Tr. 375)). Additionally, Sutton cites to Dr. Godbold's April 2017 opinion, in which he checked a box indicating that, while engaging in occasional standing/walking, she must use a cane or other assistive device. (*Id.* (citing Tr. 383)). Sutton contends, then, that because she needs a cane with only occasional standing/walking, and because light work requires standing and walking for six hours in an eight-hour day[3], "it would follow that she needs an assistive device the entire time standing or walking during light work … [which] would preclude light work." (*Id.* at 12).

The problem with Sutton's argument, however, is that the ALJ was not simply *required* to accept Dr. Godbold's statement that she requires a cane. *See Seymoure v. Comm'r of Soc. Sec.*, 2013 WL 1150723, at *5-7 (W.D. Mich. Mar. 19, 2013) (upholding the ALJ's RFC finding for light work, even where the claimant's treating physician opined that she needed a cane, and noting that the ALJ properly rejected that opinion given the claimant's limited treatment of her knees); *Fobbs v. Colvin*, 2014 WL 4638913, at *14-15 (E.D. Mich. Sept. 16, 2014) (upholding

---

[3] *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); *see also Soc. Sec. Rul. 83-10*, 1983 WL 31251, at *5-6 (Jan. 1, 1983).

7

ALJ's decision not to include need for cane in RFC despite three physicians' opinions stating that plaintiff required a cane for ambulation).  As set forth above, in explaining her RFC finding, the ALJ thoroughly discussed the medical evidence of record and concluded that it did not support the extensive mobility issues alleged by Sutton or the need for a cane as determined by Dr. Godbold.  (Tr. 17-18).  Specifically, the ALJ noted that, in contrast to Dr. Godbold's opinion as to Sutton's extreme limitations – and her need for a cane – Sutton did not consistently complain to him of right knee pain during the relevant period.  (Tr. 17).  Moreover, the ALJ noted that, even on the day Dr. Godbold prescribed the cane, he made no abnormal neurological or musculoskeletal findings, rather noting only Sutton's subjective report that her knee had recently "given way."  (Tr. 17, 374-75).  Additionally, the ALJ noted that, at the consultative examination, Dr. Shelby-Lane observed that Sutton did not use a cane or other aid for walking.  (Tr. 17, 288).

In short, it was the ALJ's duty to evaluate the evidence of record, resolve any conflicts in the evidence, and formulate Sutton's RFC.  *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [her] residual functional capacity.") (internal quotations omitted).  Here, the ALJ did just that, and Sutton has not established error simply by pointing to evidence in the record – evidence that the ALJ considered and discussed – and urging the Court to weigh that evidence differently.  *See Williams v. Comm'r of Soc. Sec.*, 2018 WL 1322396, at *10 (E.D. Mich. Feb. 26, 2018) (an ALJ's decision cannot be reversed "merely because there exists some other evidence in the record that might support a different conclusion").  For all of these reasons, where the ALJ considered the relevant evidence and supportably declined to incorporate the need for a cane into the RFC, Sutton has identified no

error warranting remand.

### 2. The ALJ Properly Evaluated Dr. Godbold's Opinion

Sutton also challenges the ALJ's evaluation of the April 2017 opinion of her primary care physician, Dr. Godbold. (Doc. #12 at 13-17). The well-established treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

In the opinion at issue, dated April 29, 2017, Dr. Godbold indicated that Sutton's relevant symptoms were osteoarthritis and degenerative joint disease pain in her limbs, as well as fatigue. (Tr. 381). Dr. Godbold further indicated that Sutton's right knee pain was 7 out of 10 on the pain scale constantly, and that it increased with walking and sitting. (*Id.*). When asked to identify the clinical findings and objective signs supporting his opinion, Dr. Godbold listed "swelling, stiffness risk of fall." (*Id.*). Dr. Godbold further opined that Sutton's symptoms were severe enough to interfere with the attention and concentration needed to perform even simple work tasks, such that she would be off task 25% or more of the workday. (Tr. 382). Additionally, Dr. Godbold opined that Sutton could sit for less than two hours and stand/walk for less than two hours in a workday; required a cane or assistive device for standing/walking; and could only lift less than ten pounds on rare occasion. (Tr. 383). The ALJ discussed this opinion but assigned it

"very little weight," reasoning as follows:

> Dr. Godbold completed a questionnaire as to the claimant's residual functional capacity, citing a number of varied limitations; however, the extreme findings are inconsistent with the medical evidence of record. His own records do not even indicate extreme swelling, stiffness, or risk of fall as cited in the questionnaire. The fact that the claimant does not use an assistive device is inherently incongruous with Dr. Godbold's extreme limitations. The limitations on lifting less than 10 pounds are not supported by any clinical findings or imaging studies.

(Tr. 17-18).

Sutton now argues that the ALJ "failed to comply with the procedural aspect of the treating physician rule" because the reasons she articulated for discounting Dr. Godbold's opinion are "conclusory" in nature. (Doc. #12 at 13, 15). The Court disagrees. To begin with, in addition to noting that Dr. Godbold's extreme limitations were "inconsistent with the medical evidence of record" as a whole, the ALJ also discounted the doctor's opinion as inconsistent with his own treatment notes and clinical findings, as well as the lack of imaging studies that would support such extreme lifting restrictions. (Tr. 17-18). Sutton points to no imaging studies that contradict the ALJ's finding, and a review of Dr. Godbold's notes shows the ALJ's "consistency" determination is supported by substantial evidence. (*See e.g.*, Tr. 352-53 (no balance or gait difficulty, normal strength in the lower extremities), 357 (only mild tenderness in the right knee without synovitis and with good range of motion), 359-60 (normal lower extremities), 367 (normal musculoskeletal exam), 370 (normal strength and sensation)). The ALJ also noted that the symptoms Dr. Godbold listed as justifying the opined limitations – swelling, stiffness, and risk of fall – are not documented anywhere in his own treatment notes. (Tr. 17, 381). The ALJ's reliance on these discrepancies in discounting Dr. Godbold's opinion was proper and is supported by the evidence. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4) (supportability of the opinion and consistency of the opinion with the record as

a whole are factors the ALJ must consider when weighing opinion evidence).

Additionally, in contending that the ALJ's reasoning was merely "conclusory" in nature, Sutton ignores the fact that the ALJ's discussion of Dr. Godbold's opinion must be read in the larger context of the decision as a whole. For example, in her discussion of the medical evidence, the ALJ noted that, despite Sutton's allegations of knee pain and associated issues with mobility, the only findings noted by Dr. Shelby-Lane at the consultative examination were a slight limp and slightly limited flexion of the right knee. (Tr. 17, 288). The ALJ also noted that, although Dr. Godbold treated Sutton fairly consistently from July 2015 through April 2017, she did not consistently complain to him of right knee pain, and the treatment notes document few, if any, abnormal neurological or musculoskeletal findings. (Tr. 17, 352-53, 357, 359-60, 367, 370, 372, 374-78). Overall, Sutton was able to manage her knee pain with conservative treatment (including physical therapy and injections) and did not even take pain medication. (Tr. 331-43). Finally, no specialist provided an opinion as to Sutton's functional capacity or opined that her knee impairment was disabling.

All told, the Court finds that, reading the ALJ's decision as a whole, she provided good reasons, supported by substantial evidence, for discounting Dr. Godbold's opinion, and Sutton has not identified any error warranting remand. *See Fox v. Comm'r of Soc. Sec.*, 2014 WL 4897696, at *6 (Sept. 30, 2014) (ALJ gave good reasons for discounting treating physician opinion; "[a]lthough the ALJ's explanation on this point was perhaps too succinct, when read in the context of the opinion and Plaintiff's longitudinal history, there is good reason to discount [the opinion]."); *Fifer v. Comm'r of Soc. Sec.*, 2016 WL 1399254, at *2 (E.D. Mich. Apr. 11, 2016) (even where an ALJ uses "somewhat formulaic and non-specific language to explain her decision to accord only 'limited weight' to [an RFC] assessment … this explanation must be

viewed against the backdrop of 'a … discussion of the treating records' that preceded it").[4]

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **GRANTED**, Sutton's Motion for Summary Judgment (**Doc. #12**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: October 18, 2018  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

## REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing

---

[4] Sutton does identify one misstatement in the ALJ's decision, but it does not require remand. Specifically, the ALJ discounted Dr. Godbold's opinion, in part, because she found his extreme limitations to be "inherently incongruous" with the fact that Sutton did not use an assistive device. (Tr. 17-18). As Sutton correctly points out, however, Dr. Godbold prescribed a cane for her approximately one month before completing the opinion at issue, and Sutton testified at the hearing that she used the cane, albeit "not all the time." (Tr. 32-33, 375). Regardless, however, where the ALJ articulated additional reasons for discounting Dr. Godbold's opinion, all of which find support in the record, remand to correct such an error would be futile. *See Urbanczyk v. Comm'r of Soc. Sec.*, 2017 WL 4296606, at *3 (E.D. Mich. Sept. 28, 2017) (fact that several – but perhaps not all – of the reasons articulated by the ALJ for discounting treating physician opinion were supported by substantial evidence provided "an ample basis for upholding the ALJ's decision to discount [the doctor's] opinion").

objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

*Note these additional requirements at the direction of Judge Michelson:*

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 18, 2018.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
